All right, we're prepared to hear arguments, Sky Angel v. Discovery Communications, and Ms. Calkins? Good morning, may it please the court, my name is Lynn Calkins, counsel for Sky Angel. Your Honor, this issue can be, this appeal can be resolved on a singular issue, which is that the contract that was at issue in the case below was not ambiguous. The court made an incorrect legal conclusion that this court can now review de novo that incorrectly introduced terms into the contract and rewrote it based on the party's dispute. That's a fundamental legal issue, and we ask that you reverse based on that conclusion. Did you, I guess the first point is whether or not you actually preserved this issue of which the issue was first raised and ultimately resolved at trial, did you? Yes, Your Honor, we did, for at least two different reasons. Number one, our notice of appeal, as well as our briefing, challenged the trial court decision, not just the summary judgment decision. There was no obligation on us to file either a Rule 50 motion or to an interlocutory appeal in order to preserve it. As a second point, the Fourth Circuit has recognized that there are circumstances where appealing a matter that's a legal issue, technical legal issue, could have been appealed from the summary judgment decision alone. But we have moved beyond that because you can resolve these issues today based on the trial court's decision following the trial itself, where she articulated in that decision, again confirming that she found the contract to be ambiguous, and unilaterally was inserting the notion of public internet into the terms of the contract that had already been negotiated between the parties. That issue was not re-litigated at the trial, was it? I mean, it was a foregone conclusion, well, I shouldn't say that, I guess the judge could have changed her mind, even at trial, but all she did was cite the earlier ruling and then move on from there, is that right? Well, she didn't just cite the earlier ruling, she reiterated her conclusion repeatedly. She did in multiple instances say, as was already found in the summary judgment decision, but she also re-found it that the contract was ambiguous. There's not very much evidence that we could have put on. The bench trial clarified, the whole point of the bench trial was to clarify the ambiguity that takes some extrinsic evidence and clear it up. That's exactly right, Your Honor, and as I was about to indicate, there was not any evidence we could have put on at a trial to demonstrate that the contract was unambiguous, because the court was supposed to review the contract as a matter of law on its face and not accept extrinsic evidence. So we did raise during opening argument that she should interpret the express terms of the contract, but the entire point of the trial was to look at what the ambiguity was if there was one, and then find if discovery had terminated the contract with the level of objective reasonableness as it was obligated to do so. Do you think you win, just the same standard that you would have to win under summary judgment, or after a bench trial now, your burden would be that the language is not ambiguous and in not being ambiguous, you win as a matter of law? That's correct, Your Honor, and we believe that you do. Could it be, is it possible, legally possible, that the contract is not ambiguous, but you lose? Is that possible, Liz, just in the realm of legal options, is that possible? It's hard to see how that would be an option. It's possible. I'm sure it... It would be easy. The language is not ambiguous, and the language unambiguously gives them the right to terminate the contract. That's easy. Well, not in terms of that perspective, but the decision maker, Mr. Goodwin, was obligated to use the terms of the contract in order to assess whether it was objectively reasonable to terminate. Right. And so, in looking at the clause, high-speed data connection... over a high-speed data connection, you say that's not ambiguous, correct? Correct. And you say that is not ambiguous in that it means a number of things, one of which includes public Internet? Well, let's put aside public Internet a little bit because there was a dispute below as to what the parties meant by public Internet. Don't you argue that in your brief? Oh, yes. Well, we certainly argue, Your Honor, that high-speed data connection is a broad term and it includes a variety of different things. You say in your brief it includes public Internet. That's what... I got that term from you. Okay. That's fair, Your Honor. And it is the term that the district court used. I mean, it's fair. I know it's fair or not. You said public Internet. That's the way I got it. I don't say public Internet, but I'm just... They'll use your term. Okay. So, that does include the Internet, the public Internet. Correct. Yes. That's your provision. That's your view that that language is unambiguous. Yes. It is unambiguous. It means any sort of connection that... Includes. Is it your view that the language I just read over that high-speed data connection includes a number of options, including Internet? Correct. Absolutely. Absolutely. And if the parties had wanted a restriction to exclude certain data connections, they had the opportunity to do that on the plain face of the contract, and they did not do so. Instead, they adopted a broader term, and just because something is broad does not mean that it's ambiguous. The court improperly introduced the concept of public Internet and used the party's dispute, therefore, as a way to interpret the contract and create a dispute. Once you, back to your question about whether we would lose or not, if, even if you find it's unambiguous, Mr. Goodwin was required to utilize the terms of the contract when he was assessing whether Sky Angel had complied or not before terminating. Then I'm going to look at provision, the grant of rights under 2, I'm going to read all the language to you. I know you're familiar with it, but I'm going to ask you a question about it. Affiliate acknowledges and agrees that the rights granted to the affiliate herein are limited to distribution of the services by viewing by subscribers on television sets on a subscription basis and not for viewing on personal computers or otherwise via the Internet. If I were to read that language to say affiliate agrees that affiliate may not distribute for viewing via the Internet, why don't you lose unambiguously? From a, well, number one, from a grant of rights provision, you need to, you can look at the very first part of that clause, grammatically. Viewing by subscribers on television sets on a subscription basis, that is absolutely what they were doing. No, no, no, and. I understand, and the viewing is the key phrase that is repeated in there. I'm saying to you, listen to me, if I read that language and I say it's clear to me that that grant says you are not granted the right for viewing via the Internet, if you read it that way, isn't this contract unambiguous and you lose? No your honor. Tell me why. Because that is dealing with the viewing by the subscriber, by the person at the end use. So if there was an iPad tablet or something else, the parties had already expressly decided. It doesn't say that. Well it says for viewing on personal computers or otherwise via the Internet, meaning that it is. No, no, no, not meaning, you're adding now what the words say and not for viewing. Listen to what I say the words say. This is my hypothetical, I think it's supportive of the language, and not for viewing via the Internet. Why does it, it's exactly what you, services you're offering and it's exactly what is unambiguously excluded from the grant. Because it is addressing the viewing as opposed to the distribution methodology. The provision that allowed them to terminate under 12.1 only, the issue that was raised only dealt with the distribution methodology. I don't know about what was raised, I'm telling you, I just read the contract, I'm reading the contract and it seems to me, I think you make the point that that high speed connection, to me, that's not, that's unambiguous, I know some people think it is, I don't see how it is. And you just told me that language unambiguously includes a number of things including Internet. So then this provision isn't at all inconsistent with that provision because you just said there are a number of options under which a person could have this contract rights under high speed connection. One of which would be the Internet and I just suggest to you that the contract turns around and takes away your right to do it via Internet in that grant limitation. Well your honor, I don't think it took it away, I don't, because if it had taken it away it could have been more expressed. This was dealing with viewing. I just say this again, affiliate is limited and not for viewing via the Internet. I understand your honor, but I. If you wanted the right to distribute, it seems to me, in this way, it seems to me you would have gotten it in a lot more specific and clear way. And I can't see that the contract grants you the right which is virtually unlimited distribution. Certainly over the Internet and I don't see that in the contract and also there is in the contract, unless there's a right specifically given you, that it reverts to discovery. And it just seems to me that if you wanted the right to do what you did, that that would have been in far more precise language than any kind of thing I'm reading here. You can try to tease it out, but I don't, that's a hard, that's a hard step to take I think. Well your honor, there's no doubt that the language could have been clearer and the parties could have put additional caveats in it, but they, high speed data connection most certainly encompasses use of the Internet. But it also encompasses other things, so by definition, isn't it ambiguous? No, because just because it is broad and encompasses many things. But doesn't the Maryland law say that when a provision is susceptible to more than one meaning it's ambiguous? But it isn't susceptible to more than one meaning. It's simply broad. Because you have different options by which the information can be transmitted. But your honor, that doesn't make it more meanings. The meaning still is a high speed data connection and there are examples of high speed data connection which includes the Internet, includes DSL, includes lots of different opportunities. And the other thing that Judge, I think it was Judge Chastanel that conducted the bench trial where she said look, there are an awful lot of business reasons that discovery wouldn't have granted you the right that you now claim and that I can't find in the contract. And one of the things is that all kinds of contracts that discovery has with third parties and their licensing agreements and for you to be distributing the content in the way you want raises all kinds of, arguably, raises all kinds of contract disputes with discovery and the licensees. And I think the licensees, the parties to these license agreements were complaining about this method of distribution. They didn't read it in the contract that you had the right to do it. And the other reason that discovery wanted to maintain the quality of its content and if you're just distributing it here, there, and elsewhere over the Internet, you begin to lose those quality controls. So Judge Chastanel is saying there are all kinds of business reasons why discovery wouldn't grant this right and why they didn't in the kind of terms that if you wanted it, you could have bargained for. Your Honor, if I may respond, what you're raising is a very good point, which is that even if you find that the contract is ambiguous, we also had the discussion about extrinsic evidence and what does it lead to. Judge Chastanel focused on discovery's perspective and what internally believed she was obligated under common Maryland law to look at what the party's intent was from an objective contract perspective. She was obligated to look at the drafting history, which struck provisions dealing with the public Internet. She was obligated to look at the industry expert that we put on, which explained that high speed data connection included use of the Internet. And she didn't do any of those things, focusing solely on what discovery thought, which is incorrect. Part of the party's intent, which was that discovery would have simply courted all sorts of legal disputes with third parties if it granted you these rights, and it would have lost quality control over its content. And so she's saying, just as a common sense matter, I can't believe that discovery would just grant that right and allow it to be expressed in these sort of loose terms. I mean, it doesn't compute with me. She did say that, Your Honor, but she was obligated to look at what both parties understood, what a reasonable party would understand, and Sky Angel had no reason to know that discovery had this internal policy. Well, yes. But the key word in your response to me was what a reasonable party you would understand. And it's not unreasonable to expect the lawyers who are negotiating that contract would say, wait a minute. We want the right to distribute this broadly over the public Internet, and I don't know what was in their minds. But one reason parties don't bring things up during the course of a contract negotiation is precisely because they don't want to pin it down, and they don't want it to be unambiguous, and they want to go ahead and conduct themselves the way they want to conduct themselves and take their chances with later legal action. But you knew, you're bound to have known that this issue was on the table because you're bound to have known enough about Discovery's business model and what was going to be on its mind to know that this issue was just sitting there on the table. But you didn't clarify it, and there are reasons you wouldn't want to clarify it because the answer would be, no, you can't do that. Well, Your Honor, we believe that the parties did clarify it. If the trial court had focused on the drafting history, the drafting history demonstrated that Discovery wanted language that excluded use of the public Internet. Sky Angel took that language off the table and had a discussion with Discovery that they were using the Internet as part of its distribution method. Discovery came back and therefore limited the clause to high speed data connection, which was very broad and allowed for a variety of things. Why? We believe because as they indicated in the FCC pleadings, they wanted to use this as an experiment. But regardless of why, the language is sufficiently broad that it included use of the Internet and Mr. Goodwin was obligated to look at the terms of the contract. It did include that both of you were negotiating at a time when technology was advancing and nobody was quite sure where the technology was going to go and both of you really were probably trying to protect your interests in doing this. And you thought you had. You think Discovery's quality control should go to their contract draftees and not to the cable program delivery, right? We thought that Sky Angel thought that it was definitely different than a cable system because they used a different language and so there was an alternative included in the terms of the contract. But they did fully disclose it to Discovery and it was discussed in the drafting history and we think that was an error. But I'm over my time and will sit down for rebuttal. Good morning, Your Honor. Mr. Yohai, we have to hear from you. Yes, David Yohai for Discovery and Animal Planet. This case was tried over 12 days in November 2015. The point of the trial, as Your Honors have recognized, was to resolve the ambiguity that the judge had found at summary judgment. I don't believe, as counsel stated, that this issue was preserved. The issue of whether the contract was ambiguous was determined at summary judgment. They didn't take an interlocutory appeal of that. What would have been the success of an interlocutory appeal of that issue? Well, if they truly believed that the contract was unambiguous in their favor, I suppose they might have convinced somebody to take that. But their other option was to, at trial, then raise this through a Rule 52 motion at the close of the evidence and say, Your Honor, notwithstanding the fact that we've had all this evidence, we truly believe that the contract was unambiguous in our favor and that controls you. They didn't do that either. So they never actually presented it. They can claim right now that the contract's unambiguous, can't they? They can claim it, but it's subject to a clear error review at this point since they didn't raise it. No, it's not. No, it absolutely is not. It's a matter of law, isn't it? This Court's decisions in the Chesapeake case and the Varghese case find that in this circuit, you don't distinguish between matters of fact and matters of law in evaluating that issue. It's different than other circuits. Some circuits do distinguish between that. Because the issue wasn't raised at the trial, you're left with her S.J. decision, and that can't be challenged at this point on either ground. Wait a second now. Wait a second. It's a mixed question? It's got to be at least a mixed question of law and fact. It's got to be. I'm not arguing that the issue of whether the contract's ambiguous or not. No, no. I'm arguing that the claim that a contract is ambiguous or unambiguous, that's got to at a minimum be a mixed question. I'd go further than that. The question of whether the contract's ambiguous or unambiguous is a question of law. Right. But they raised that at summary judgment, and that's where she determined it. You can't then after a bench trial where they don't raise that issue at the bench trial go back to the summary judgment decision to determine that legal issue de novo. No, it's not. It's subject to clear error. I don't think you're right at all. So in other words, the determination was made at summary judgment, which likely is not that some claim about some exceptions you can get it up here. Almost certainly that's not. Your Honor, I refer you to this court's decision. But now listen. So the question before us is are we looking at the question of whether or not the contract is ambiguous? Isn't that within our purview right now? I don't believe it is on what they're saying. Only clear error. If she made a clear error, okay. But because the issue... Okay, you're right. Yeah. But a clear error. If we say it's a legal question looking at this contract, if she was wrong, that is. It is a clear error. If you find it was clearly erroneous, Your Honor, you can review it under that standard. But not de novo. But wait, wait, wait. Yes. If we look at this and decide this contract is unambiguous and that her determination was ambiguous, that is at least a mixed question, which is same standard of legal review. I don't understand that the fight to say they can't present their argument because it didn't went on summary judgment. It's the same issue that is before the court. They don't... With all respect, Your Honor... They don't require to stand up repeatedly. The judge knows their view on it. The judge defeated their view on it. That was a necessary condition preceded to get to the trial. I don't understand the rush to take that off the table, because what I think it turns out to be, quite frankly, it doesn't particularly matter to you. That's what I was going to say. Well, I said it before. Yeah. Thank you. Thank you, Your Honor. I don't understand the argument about that. There may be some technical arguments. Yes. I'm just saying this is me talking, but it gets to the same point. I think the point it gets to now is, I think, she has to show that the contract is, you heard my first questions, it's unambiguous, and that she wins under that unambiguous contract. You agree with that? I do agree with that. I also agree with Your Honor's point about the grant of rights. We argue... Let's get to that in a minute. Let's get to that in just one second. Okay. But because the court found it to be ambiguous and then held a bench trial, if we agree with the court that it's ambiguous, then she's looking at findings of facts and other things below that she has a very high verdict on. Is that correct? That's my point, Your Honor. Yes. That is also subject to a clear error review. Right. I mean... And Your Honor's not supposed to re-weigh the evidence. The court's not supposed to re-weigh the evidence. No, no, no. That leads us to the conclusion. I think we've just agreed that the only way she wins is that it is unambiguous, and under that reading, she wins as a matter of law. Absolutely, Your Honor. That's clearly true. Now tell me, did you hear my hypothetical? It wasn't a hypothetical. It was a question based on the contract language. Yes. I did hear you. Do you think that high-speed data connection, why is that ambiguous at all? It's ambiguous because it's susceptible to several different meanings, and I'll explain Here, the parties were discussing a system like Verizon, which is what they told us. But we don't... No, no, no. Wait, wait, wait, wait. All that what you said and what you told, it doesn't matter. What is that? High-speed data connection, how is that ambiguous? As I was explaining, Your Honor, there are various forms of high-speed data connection. Does any of them include, do any of them include, well, would all of them include Internet as an option? The Internet uses a high-speed data connection, but that doesn't mean that they were allowed to use the Internet in this contract because, because, because it referred to a high-speed data connection. It didn't grant them rights to use any high-speed data connection. And the high-speed data connection that they were allowed to use was something akin to a Verizon or an AT&T, a private line, a private high-speed data connection. Also, as Your Honor pointed out, in the grant of rights, it explicitly prohibited... Ask the second question. Well, she was looking at the contract as a whole, and she found the contract as a whole to be ambiguous, not just 1.1.2, but the contract as a whole. So then she has to find that the high-speed data connection means only one thing? She doesn't have to find that. She has to find that it was clear that that meant the Internet here. Well, I don't think it's clear, and that's why it's ambiguous. No, it seems to me... I mean, I don't know why you're fighting this, because it seems to me it's the clearest way you went under the contract. And I read the contract, and I went, high-speed data connection, what does that mean? And I think it's fairly clear it means a high-speed data connection. There's no evidence. I mean, what's ambiguous about that term? And I said, what does that mean? And it looks like it may include Internet. Yes. The fact that it would include Internet, would it make it ambiguous? It wouldn't make it ambiguous, because you could have, both sides could agree, that there's high-speed data connection that has a number of things, including Internet. So I said, well, how do you reconcile? The next step is, can the contract be reconciled? And it seems to me it's reconciled through that grant provision. Yes, Your Honor, that was the position that we argued at summary judgment, the second part, that the grant of rights was clear in our favor. So you moved on to the next step. Well, she found it to be ambiguous, and that's why we had the trial. She found the whole contract, in light of that tension, she found it to be ambiguous. But let's go back to where you were initially. Your position is what I'm suggesting the contract reads as now, which is... See, because the way I'm reading it, there's no inconsistency in the contract whatsoever. Do you agree with me on that? We definitely agree with you on that, but we also agree that we are where we are in that she found the contract to be overall ambiguous because of the tension between all of these provisions. And I think when you do look at all of these provisions... But there isn't any tension between them. Under Your Honor's scenario, there isn't. But Your Honor is saying that... I think my scenario is incorrect, that the way that I read this, doesn't that eliminate... Well, by the way, there may be tension in other provisions that aren't in question, but under my reading, there's no tension at all, is there? Under your reading, no. And again, that was the position that we took... And you understand my reading is... Absolutely. They may use high-speed... It says over a high-speed data connection. I checked their brief this morning again. Their position is that that language includes a multiple array of connections, one of which is Internet. So then when I look over and I read that grant... I'm paraphrasing, but this is what it says. Not for viewing via the Internet. Yes. What that does is that makes this grant completely consistent on the face of the contract with the high-speed data connection. Yes, Your Honor. I agree with... That is true if you take that view, but the judge didn't take the view. She took the view that it was ambiguous. That really modified the rights with respect to the retail consumer, not the parties. She did. And, frankly, we always thought it was clear that there was no Internet. But if you don't agree that it was a prohibition, what it certainly doesn't do is grant them Internet rights. And that, frankly, is why. What you're saying to us is that all roads lead to Rome. Correct. That's exactly what I'm saying. I thought you were going to say we went under that provision, her provision, my provision. All roads lead to Rome. All roads do lead to Rome. I heard a few other comments about how they told us that they were going to use the public Internet. That's just not supported by the record. In fact, the opposite. All of the witnesses admitted that they had a discussion and that they were not permitted to use the public Internet. Ms. Freeman testified to that. It's at 435 through 437 of the JA. Even Mr. Scott admitted that. He said at 437, that's their president, Sky Angel, was not using the public Internet. I think that part is very clear. Also, that the parties discussed the fact that they couldn't use the public Internet. Why? The very reasons Your Honor pointed out, Discovery did have this policy and it did have problems with rights grants. It couldn't grant any distributor the right to just send its signal, its 24-hour-a-day channel, over the public Internet. It's illogical. It doesn't make any common sense. And that's why they told them they couldn't do that. As to the issue of Your opponent suggested that Judge Chasnow had a sort of a laser-like focus in terms of the singular intent of your client to the exclusion of all other evidence suggesting otherwise. Is that a fair characterization? Not at all. In fact, she went to pains to point out that the Questar case involved the reasonable expectations of the other party. And then, in terms of the record on that point, which is, frankly, the end of this entire discussion, Ms. Freeman told Mr. Scott he couldn't use the public Internet because we had programming rights that wouldn't allow it. And that's at JA 437, 438. So it clearly was within the reasonable expectations of the other party that they couldn't use the public Internet because Ms. Freeman told them that they couldn't do that very thing. Didn't she also spend a lot of time talking about the early draft of this agreement? Yes. So that's not correct either when she says she ignored it. No, it wasn't ignored. In fact, drafts went back and forth. Each time Ms. Freeman was telling them they couldn't use the public Internet, we even suggested a draft in that regard that you couldn't use the public Internet. Ultimately, there was compromise language drafted. It was drafted around the model of Verizon Fios, which is what they told us. They said we don't use the public Internet. We use a private line like Verizon Fios, which doesn't – security issues, all those things. As Judge Wilkinson indicated earlier, this kind of compromise language was almost guaranteed to generate a lawsuit. Well, if they had done what they told us they were doing, meaning not use the public Internet but just use the private line, we wouldn't have ended up here. The problem was – There are other contractual provisions here that receive somewhat less emphasis, but there's a contractual provision that any right not specifically granted to Sky Angel was reserved to discovery. Correct. So, in other words, in the contract itself, they say you've got to get a specific grant, and you wanted that grant expressed in specific terms. And then the contract also says that you have a right to terminate if you become dissatisfied with Angel's distributional methodology. Correct. So it seems those two provisions, the insistence on a specific grant, a reversion clause to you, and a termination right if for any reason, as I understand it, you're dissatisfied with the distributional methodology, those provisions would seem to go a good way in protecting your position. Yes. And in addition, I mean, as a matter of common sense, I just can't imagine that any producer would just be signing a contract that would allow a distributor to do whatever the heck it wanted with their content, even if it meant shredding up licensing agreements with third parties, and even if it compromised the reception and the quality of the reception of the content. You would have just been handing over the barn. That's exactly the problem. No business is going to work that way. And I would also point out, further to Your Honor's point, that that section 12.1 about our dissatisfaction with how they would send the signal, that wasn't a boilerplate provision. That was specifically added over concerns. And so that was something specifically negotiated to. So, you know, the issue was fronted. It was resolved by the parties. Discovery put in the protections that it felt appropriate. And Sky Angel was not happy with the ultimate contract. That was also the testimony at the time because of all these things that it had. By the way, if you want to do it, why don't you just, I think it's unambiguous, but it certainly would have helped, too, if at 1.2 you said over a high, if you had drafted the contract, let's just talk about what you would and wouldn't have done. Yeah. By the way, does it take much to think that maybe you would put in your contract over a high-speed data connection, not including Internet? That's not too difficult, is it? Again, that's what we thought was going on in the grant of right. I said put those words in the contract. Yes, Your Honor. You may win, but is it difficult in this contract to add those two, three words? The testimony also was that later on the contracts improved in that regard. So we took your advice in the past. But I'm saying, but even at the time, but isn't it true that at this point, technology was exploding, people were trying different things, and with little hindsight it's clear, but really, isn't it correct, everything we said and what the contract says and what it's clear you were trying to do, looking at everything, you could have just, I'm not saying you lose because you didn't, but if you want to say high-speed data connection doesn't include Internet, and everybody knew that, or you do, or you meant that's the only way you were going to do business, the simplest solution is just to add those words to it, isn't it? Yes, Your Honor. You're now getting a lesson in why a dear friend and great colleague, Judge Shedd, was such a wonderful lawyer. You're seeing it right here now. Well, if Your Honor had been writing the contract, maybe we wouldn't be here. Well, I was sitting here thinking, going, you know, lawyers got paid to draft the contract, and now lawyers are here arguing it, so not necessarily a bad thing, is it? That's true. See, he doesn't let me get away with anything either, so don't feel bad. I'm sure Discovery would have preferred not to have to go through a whole lawsuit to get back to where we were, to get back to Rome, as you say. One last point before I close, because I think we may hear this in rebuttal. To get out of this quandary, sometimes plaintiffs say that when they talked about the public Internet, they meant only the World Wide Web, and somehow that's a subset of the public Internet. But the testimony is clear on that point. This was a question asked on cross-examination to Ms. Freeman. But you understood public Internet and discussions with Sky Angel to mean the World Wide Web, right? I understood that the public Internet was the interconnection of computers throughout the world and included the World Wide Web as part of it, not all of it, as part of it. So that resolves on that point. Unless the Court has more questions, I think that's sufficient. Ms. Calkins, you've got rebuttal time. Judge Diaz, to your point about whether Judge Chasnow did consider the drafting history, you are correct that in the beginning of her factual recitation and the decision she listed the drafting history. But when she got to the point of determining what extrinsic evidence to consider, she did not reference that whatsoever and instead focused exclusively on the internal policy of discovery as well as their internal affiliation agreement. It really didn't show much because both sides struck out provisions in the drafting process and ended up with this compromised language. I'm not sure where that gets you. Well, where it gets us is the drafting history itself. To Judge Shedd's point, he was indicating whether discovery should have included information about the public Internet in the draft. And they had attempted to do so, and it was expressly excluded. So the language could not have been intended by the parties to exclude the public Internet. High-speed data connection has to mean something other than that when you look at the drafting. But an earlier draft included language that was favorable to your client, right? Well, the earlier draft included high-speed data connections and listed additional examples. Such as broadband, right? Such as DSL and other things, correctly, and broadband. And all the parties did was strike the examples, and they left a much broader phrase, which leaves us with the situation now that we have a broad term, which does not in and of itself make it ambiguous. I'm trying to focus in on that one term. And if you look at the contract as a whole, discovery, again, takes steps in the contractual language to require a specific grant. It reserves all unspecific rights to itself under a reversion clause. And there's a right of termination if they don't like the distributional methodology. And in light of that language, you're saying, and in light also of a 12-day bench trial, however long this was, it was quite a time. You're saying that, no, the upshot of all this was that as far as content was concerned, they just turned over the store. And, you know, I can't believe it. As a matter of business practice, I can't believe it in terms of this contractual language. Judge Chasnow couldn't believe it after listening to 12 days of testimony. It doesn't compute. Your position just doesn't compute with me. Well, the issue that Judge Chasnow was focused on, however, was what discovery intended. And the point that we've raised, because we don't lose if you find that it's ambiguous, you still apply not just a clearly erroneous standard, you can apply a de novo standard. And it's the fact that those intentions were written in or were manifested, at least to the point that Judge Chasnow could take extrinsic evidence and resolve it. But those intentions that you say, they weren't just hidden in the closet. The intentions were manifested in the contractual language. Well, the only contractual language that addresses it is the provision, the grant of rights, that Judge Shudd was talking about. And you need to focus not just on the via the Internet, but on the otherwise word. Because it was talking about a PC, personal computers, or otherwise. Not blankly. We were not using, subscribers were not able to view the programming in the other devices. They were specifically doing exactly what the grant of rights provided, which is allowing viewing on television sets. In violation of the licensing rights of others? Is that what the parties would have reasonably understood? I don't know that they truly were in violation of any of the other affiliation agreements. But that's what the evidence suggested, right? Well, first of all, the other affiliation agreements, I'm sorry? The licensees, the other parties to the license agreements were complaining about the distributional methodology. They did. And that is an inappropriate grounds for breaching a contract. You have to go back to the plain face of the contract and what was negotiated between the parties. If you're going to terminate based on extra-contractual reasons, that's fine. But then you have to compensate them for it. So, Your Honor, we believe, we ask that the court reverse the judge's decision, finding that it's not ambiguous. We ask that you reverse and conclude that Mr. Goodwin did not act with reasonable, objective reasonableness in terminating because he was required to look in the plain face of the contract and failed to do so. And we ask that you remand to her for the two issues, one relating to whether there was a prior breach, which she did not yet decide and was not addressed by counsel today, and also for what damages were entitled to. Don't you have to win on this contract? It has to be unambiguous and you win on that. It doesn't have to be unambiguous because under the law of this circuit... I'm asking you. I'm asking you. Do you think if it is ambiguous that the evidence, then you win on the evidence and you want a retrial on that evidence? We don't want a retrial on the evidence. Then what are you supposed to do? We don't believe the clearly erroneous standard applies. We believe that the de novo standard applies because she applied the wrong legal framework. Applies to what? The finding of ambiguity or the facts? No, the facts. If you find it's ambiguous, you all find them. In other words, you want us to say she was wrong about the ambiguity. I don't understand that if it's unambiguous, what fact finding is there? Well, there is no evidence that was presented. I'm asking you. You don't need any if the contract is unambiguous. What bench trial, what factual findings do you need? Well, that's absolutely correct. If it was unambiguous, well, no. What I'm saying is we don't lose just because if you were to conclude. Right now, is this contract ambiguous or unambiguous? It is unambiguous. And you say you win under that? You win under the unambiguous terms of the contract? Yes. No, that can't be because the unambiguous terms of the contract require a very specific grant of this right, this distributional right that you're claiming for yourself. And the unambiguous terms of the contract have a right to termination if for any reason they're dissatisfied with your distributional methodology. Those are unambiguous terms. So, you know, I come back to my comment about the different roads lead to Rome because I think if you want to go the route of unambiguity and that it's also perfectly clear, it may be, but it's clear to me that discovery wins. And the other point involved in it, if you say, well, no, it's ambiguous, then you have to give some credibility and credence to the fact that Judge Chazenow sat through 12 days of trial. Well, one way or another, it's a difficult road. It is a difficult road, Your Honor, but I don't believe it's exclusive for us one way or another. We believe that if under finding that the contract is not ambiguous, when you look at 12.1, it's specified about a distribution methodology. The terms that define the distribution methodology. I want you to answer my question. I'm not saying if you win on this. I'm just understanding your argument. Your argument is it's unambiguous. Then why is there anything else to do other than declare you the winner? We believe we are the winner. Then what would it go back for? There's no other evidence to be looked at, nothing. You just win. Isn't that the only way you win here? Well, we believe we win on liability, but the court never decided our damages. In other words, but just on the question of that you were right under the contract, you want us just to say, I'm not saying we're going to, but you want us to say the contract is unambiguous, and looking at that contract, we, not them, we win without any question. Yes, because Mr. Goodwood could not have been objectively reasonable. But to Judge Wilkinson's point, if I may, Your Honor, even if you find that it's ambiguous, we still believe that we win because the de novo standard applies. When you look at the extrinsic evidence, there are things like industry standard, they presented no contrary evidence whatsoever. I understand your point on that, and your view is that if you get into the extrinsic evidence, that the judge waited too much on what discovery's intentions were. Correct, and it was also inconsistent with the legal framework. I understand. Okay. All right. Thank you, Your Honor, I appreciate it. We thank you very much, and we'll come down and brief counsel, and then we'll take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Albert Diaz